IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TIMOTHY B. WILKS,

           Plaintiff,                       OPINION AND ORDER

v.

                                            24-cv-122-wmc

DR. JOAN HANNULA,
DR. RAJESH MADDIKUNTA,
EMILY COOK, JAMIE BARKER, and
LESLIE MCKEE,

           Defendants.

Plaintiff Timothy B. Wilks, who is representing himself, is currently incarcerated by the Wisconsin Department of Corrections ("DOC") at the Stanley Correctional Institution ("SCI"). Wilks filed this suit under 42 U.S.C. § 1983, alleging inadequate medical care. Wilks was granted leave to proceed with claims against three defendants who were employed at SCI: Dr. Joan Hannula; Health Services Manager ("HSM") Jamie Barker; and Nurse Practitioner ("NP") Leslie McKee. (Dkt. #12.) Wilks was also granted leave to proceed with claims against two defendants who are privately employed: Dr. Rajesh Maddikunta; and Registered Nurse ("RN") Emily Cook. (*Id*.) Defendants Hannula and Barker have filed a motion for summary judgment on the ground that Wilks failed to exhaust administrative remedies on his claims against them. (Dkt. #30.) Defendants Maddikunta and Cook have filed a similar motion. (Dkt. #33.) For reasons explained below, defendants' motions for summary judgment will be granted.

UNDISPUTED FACTS[1]

While confined at SCI in 2021, Wilks was referred by Dr. Hannula to an off-site specialist in cardiology, Dr. Maddikunta, who recommended that Wilks receive a pacemaker. Wilks alleges that, after surgery to implant the pacemaker on April 16, 2021, he was told by a medical technician that he would receive a "Merlin monitor" to track his pacemaker and report any irregularities. At a follow-up appointment on April 22, 2021, however, Wilks was told that prison officials would not allow him to keep the monitor in his cell under a policy at SCI that does not permit telehealth devices in cells. Instead, Wilks was told that his pacemaker would be monitored wirelessly in the Health Services Unit ("HSU") through off-site equipment at Dr. Maddikunta's clinic.

Wilks claims that wireless monitoring through off-site equipment, which was operated by RN Cook, was inadequate. Specifically, Wilks alleges that in March and April 2023, he experienced several episodes of atrial fibrillation caused by malfunctions of the off-site equipment or "unprofessional" monitoring by Cook. Wilks claims that Dr. Maddikunta, Dr. Hannula, and HSM Barker wrongly denied him a Merlin monitor in his cell for daily monitoring and that his heart condition has worsened as a result of the inadequate monitoring he received. The court granted Wilks leave to proceed with the following claims:

---

[1] The facts in this section are taken from the summary-judgment record. While the court views the record "in the light most favorable to the nonmovant and constru[es] all reasonable inferences from the evidence in his favor," *Moore v. Western Ill. Corr. Ctr.*, 89 F.4th 582, 590 (7th Cir. 2023), a nonmovant is only entitled to favorable inferences that are supported by admissible evidence, not those based upon mere speculation or conjecture, *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017), or upon "[c]onclusory statements, not grounded in specific facts," *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016).

2

1) Eighth Amendment claims against Dr. Hannula, Dr. Maddikunta, and HSM Barker for failure to ensure adequate pacemaker monitoring.

2) State law medical malpractice claims against Dr. Hannula and Dr. Maddikunta for failure to ensure adequate pacemaker monitoring.

3) State law negligence claims against RN Cook for failure to ensure adequate pacemaker monitoring.

(Dkt. #12, at 7-10.) The court also granted Wilks leave to proceed with Eighth Amendment and First Amendment retaliation claims against NP McKee for subjecting him to unnecessary drug testing in November 2023, after Wilks threatened to file a malpractice lawsuit against Dr. Maddikunta.

OPINION

The Prison Litigation Reform Act ("PLRA") bars a prisoner's civil action about prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[2] To satisfy the exhaustion requirement, a prisoner must follow all the prison's rules for completing its grievance process. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requires: (1) following instructions for filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005); and (2) filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).

---

[2] Wisconsin state law also requires prisoners to exhaust administrative remedies. *See* Wis. Stat. § 801.02(7)(b) ("No prisoner may commence a civil action or special proceeding, including a petition for a common law writ of certiorari, with respect to the prison or jail conditions in the facility in which he or she is or has been incarcerated, imprisoned or detained until the person has exhausted all available administrative remedies . . . ."); *see also* Wis. Admin. Code § DOC 310.05 ("Before an inmate may commence a civil action or special proceedings, the inmate shall exhaust all administrative remedies the department has promulgated by rule.").

3

The exhaustion requirement, which is mandatory, is designed to afford prison administrators an opportunity to investigate and resolve grievances without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006).  A prisoner is required to provide notice of his claim by specifying "the nature of the wrong for which redress is sought . . . [to give] prison officials a fair opportunity to address his complaint." *Jackson v. Esser*, 105 F.4th 948, 959 (7th Cir. 2024) (internal quotations and citations omitted).  Thus, exhaustion is required "even if . . . the prisoner believes that exhaustion is futile." *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006); *see also Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) ("An inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement.").  However, a prisoner's failure to exhaust is an affirmative defense, which defendants must accordingly prove.  *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018).  In particular, at summary judgment, defendants must show that there is no genuine dispute of material fact as to plaintiff's failure to exhaust, and therefore, they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

To exhaust administrative remedies for a civil rights claim, a Wisconsin prisoner must follow the Inmate Complaint Review System ("ICRS") process set forth in Wisconsin Administrative Code Chapter DOC 310, which first requires inmates to attempt to resolve the issue by following a "designated process specific to the subject of the complaint." Wis. Admin. Code § DOC 310.07(1).  Specifically, an inmate must file a formal written inmate complaint regarding the issue he wishes to raise within 14 calendar days of the occurrence

4

giving rise to the complaint. *Id*. § DOC 310.07(2). The complaint must also clearly identify the issue the inmate seeks to complain about. *Id*. § DOC 310.07(5).

The Institution Complaint Examiner ("ICE") may either accept, reject, or return an inmate complaint. *Id*. § DOC 310.10(2). A complaint may be rejected for any of the nine reasons stated in Wis. Admin. Code § DOC 310.10(6)(a)-(i). For example, a complaint may be returned if it does not provide sufficient information. *Id*. § 310.10(6)(d). It may also be rejected if the inmate submitted the complaint beyond 14 days of the occurrence giving rise to the complaint and provides no good cause to extend the time limit. *Id*. § 310.10(6)(e). An inmate may appeal a rejected complaint to the appropriate reviewing authority within 10 days. *Id*. § DOC 310.10(10). A complaint may be returned within 10 days of receipt if it fails to meet filing requirements, including failing to resolve the issue informally before filing a formal grievance. *Id*. § DOC 310.10(5). An inmate has 10 days to correct the deficiencies and then can resubmit the formal grievance. *Id*. § DOC 310.10(5).

Once the complaint is accepted, the ICE makes a recommendation to the reviewing authority. *Id*. § DOC 310.10(12). The reviewing authority then has 15 days after receiving the recommendation to either affirm or dismiss the complaint in whole or in part. *Id*. § DOC 310.11(1)-(2). Within 14 days after the date of the reviewing authority's decision, an inmate may appeal the reviewing authority's decision to the Corrections Complaint Examiner ("CCE"). *Id*. § DOC 310.12(1).

Finally, the CCE has 45 days in which to make a recommendation to the Office of the Secretary of the DOC or to notify the inmate that more time is needed. *Id*. § DOC

310.12(9). The CCE "may recommend rejection of an appeal not filed in accordance with § DOC 310.09." *Id*. § DOC 310.12(5). The Secretary then has 45 days in which to make a decision following receipt of the CCE's recommendation. *Id*. § DOC 310.13(1). If an inmate does not receive a decision from the Secretary within 90 days of receipt of the appeal in the CCE's office, he may consider his administrative remedies exhausted. *Id*. § DOC 310.13(4).

The Seventh Circuit applies a "strict compliance approach to exhaustion." *Dole*, 438 F.3d at 809. This means that if a prisoner failed to complete any step in the exhaustion process before bringing his lawsuit, the court must dismiss his claims. *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999). "Substantial compliance with administrative remedies" is insufficient to satisfy the exhaustion requirement. *Farina v. Anglin*, 418 F. App'x 539, 543 (7th Cir. 2011) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001), and *Dole*, 438 F.3d at 809).

Defendants identify two inmate complaints that are potentially relevant to plaintiff's allegations against defendants Dr. Hannula, Barker, Dr. Maddikunta, and Cook.[3] Each complaint is examined separately below.

1. **Inmate Complaint SCI-2021-6703**

On April 30, 2021, plaintiff filed an inmate complaint (SCI-2021-6703), stating that "HSU staff" refused to give him "daily cell possession" of a Merlin monitor for the

---

[3] Plaintiff filed two other grievances (SCI-2023-17281 and SCI-2-24-2571) that concern the allegations against defendant McKee, who does not join the motions seeking dismissal for lack of exhaustion. (Davidson Decl. Ex. 1003 & 1004 (dkt. #32-4, #32-5).)

pacemaker that was implanted on April 16, 2021. (Davidson Decl. Ex. 1001 (dkt. #32-2) at 10.) The ICE contacted the HSU and learned that Wilks only needed a "pacemaker check" every three weeks according to his off-site treatment provider. (*Id*. at 2.) Moreover, all pacemaker checks were completed in the HSU and transmitted out of the institution because the Merlin monitor did not have the capability to transmit the necessary signal. (*Id*.) Because the HSU completed all pacemaker checks as ordered from a provider due to "transmission capabilities," there was "no medical reason" for plaintiff to have a Merlin monitor in his possession. (*Id*.) Therefore, the ICE recommended dismissing the complaint. (*Id*.) The reviewing authority agreed, and the complaint was dismissed on April 30, 2021. (*Id*. at 3.)

Plaintiff appealed, presenting a medical record that showed on April 20, 2021, his off-site treatment provider (presumably, defendant Maddikunta) recommended that he receive "pacemaker remote checks every 3 *months*," rather than every three *weeks* as the ICE reported, and a follow-up appointment in one year. (Davidson Decl. Ex. 1001 (dkt. #32-2) at 21 (emphasis added).) Plaintiff's appeal was also dismissed by the Office of the DOC Secretary on the CCE's recommendation. (*Id*. at 6.)

However, defendants Hannula and Barker note that SCI-2021-6703 is limited to plaintiff's claim that he was not allowed to possess a Merlin monitor in his cell for daily monitoring and did not raise any of the adverse effects that he reportedly suffered later in 2023 as the result of inadequate off-site monitoring. Indeed, the events that plaintiff now complains about happened in 2023, about two years after he submitted SCI-2021-6703. Moreover, defendants Maddikunta and Cook note separately that SCI-2021-6703 blames

the decision to deny the Merlin monitor on prison "HSU staff" and not anyone privately employed by an off-site provider, such as themselves. Because this inmate complaint does *not* mention plaintiff's claim that lack of proper monitoring caused him to suffer atrial fibrillation, this grievance did not afford prison officials notice of the problem outlined in plaintiff's complaint and was insufficient to exhaust administrative remedies for any of his claims.

### 2. Inmate Complaint SCI-2023-13329

On September 6, 2023, plaintiff filed another inmate complaint (SCI-2023-13329), alleging that his off-site pacemaker monitor malfunctioned between March 27, 2023, through June 29, 2023, causing him to suffer episodes of atrial fibrillation that allegedly damaged his heart.[4] (Davidson Decl. Ex. 1002 (dkt. #32-3) at 8, 10.) The ICE rejected the complaint because it was beyond the 14-day limit found in Wis. Admin. Code § DOC 310.07(2). (*Id.*) Specifically, the ICE found as follows:

> The date of occurrence giving rise to this complaint began on 3/27/2023 and went through 6/29/2023 per the complainant, and this complaint was received on 9/6/2023 which is beyond the 14-day time limit to file a complaint. Inmate Wilks makes no plea for good cause. He does not present evidence to show how he was denied the use of or inhibited in any way from using the ICRS since the date of the occurrence. The complaint is rejected as it fails to adhere to the stated filing requirement.

(*Id.*) On appeal, plaintiff acknowledged that he "forgot" about the 14-day deadline and

---

[4] Plaintiff argues that the inmate complaint addressed issues occurring from March 27, 2023, through the date that he signed it on September 5, 2023. (Dkt. #37, at 8.) The inmate complaint, which refers only to symptoms associated with pacemaker monitoring malfunctions occurring from "3/27/2023 thru 6/29/2023," does not support plaintiff's argument. (Davidson Decl. Ex. 1002 (dkt. #32-3) at 8, 10.) Likewise, plaintiff's complaint focuses primarily on pacemaker checks done between March 27, 2023, and April 18, 2023, which he claims were tainted by malfunction and resulted in inadequate monitoring. (Dkt. #1, at 8-10.)

8

the good cause requirement, but argued that the ICE had discretion nevertheless to contact the HSU and refer his complaint for investigation. (*Id*. at 14.) However, the reviewing authority concluded that the complaint was appropriately rejected. (*Id*. at 5-6.)

It is undisputed that the only inmate complaint that raised plaintiff's claim that he was denied adequate medical care due to faulty pacemaker monitoring was rejected as untimely. Prisoners are required to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. The exhaustion requirement is not fulfilled "by the filing of an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83-84; *see also Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005) ("[A] prison grievance rejected solely on the basis of untimeliness will not fulfill the exhaustion requirement."); *Torry v. Salter*, No. 11-cv-748-wmc, 2013 WL 6238608, at *3 (W.D. Wis. Dec. 3, 2013) ("Regardless of the exact reason for rejecting the complaint, a rejected complaint cannot be exhausted.") (citations omitted).

As noted above, an ICE may accept a late inmate complaint if the inmate shows good cause for filing beyond the 14-day limit. Wis. Admin. Code §§ DOC 310.07(2), 310.10(6)(e). Whether good cause has been shown is determined at the ICE's discretion. *Shaw v. Chapman*, No. 20-cv-852, 2021 WL 5326640, at *5 (E.D. Wis. Nov. 16, 2021) ("Any request or need for good cause is evaluated on a case-by-case basis and is determined at the ICE's discretion."). Wisconsin's regulations required plaintiff to "'explicitly' justify his untimeliness" in his inmate complaint. *Fitzpatrick v. Fruehbrodt*, 843 F. App'x 814, 815 (7th Cir. 2021) (citing Wis. Admin. Code § DOC 310.07(2)). Here, the ICE determined

9

that plaintiff's inmate complaint did not include good cause to excuse the 14-day limit or show that he was otherwise unable to access the ICRS during the relevant time. (Davidson Decl. Ex. 1002 (dkt. #32-3) at 2.)

Nevertheless, plaintiff alleges that his inmate complaint was timely filed because he submitted an information request to defendant Barker on August 22, 2023, to attempt informal resolution of the issue, and executed inmate complaint SCI-2023-13329 on September 5, 2023, within the 14-day limit. (Dkt. #37). Plaintiff argues further that, because his complaint raised a "health and personal safety" issue, the 14-day time limit does not apply. (*Id.* at 14.) Both arguments are unpersuasive. DOC procedure plainly requires an inmate to file his complaint within 14 days of the "occurrence" that forms the basis of the inmate complaint, Wis. Admin. Code § DOC 310.07(2), and not the date informal resolution is completed. The regulation also requires an inmate to plead "explicitly" good cause for filing a tardy complaint. The regulation contains no exception to the 14-day time limit or the good cause requirement. Even if plaintiff incorrectly believed otherwise, "he should have 'err[ed] on the side of exhaustion' and timely initiated the formal grievance process."[5] *Williams v. Rajoli*, 44 F.4th 1041, 1046 (7th Cir. 2022) (quoting *Ross v. Blake*, 578 U.S. 632, 644 (2016)). Therefore, plaintiff's delay in filing his inmate complaint beyond the 14-day limit is not excused. *Williams*, 44 F.4th at 1046; *see*

---

[5] The ICE may return a complaint if the inmate did not attempt to resolve the issue informally by "following the designated process specific to the subject of the complaint" before filing it. Wis. Admin. Code § DOC 310.07(1). When the ICE returns a complaint, it must give the inmate the opportunity to "resubmit the complaint after correcting issues noted by the ICE." Wis. Admin. Code § DOC 310.07(5). Thus, if plaintiff had any doubts about the designated process for informal resolution, plaintiff could have submitted his inmate complaint without first completing that process.

*also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("when the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited").

Plaintiff argues further that application of the 14-day time limit violates due process. (Dkt. #37, at 15.)  However, the Supreme Court has repeatedly emphasized to the contrary, holding that § 1997e(a) mandates exhaustion of all administrative procedures before an inmate can file any suit challenging prison conditions.  *Booth*, 532 U.S. at 739; *Woodford*, 548 U.S. at 85; *see also Jones v. Bock*, 549 U.S. 199, 212 (2007) ( "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").  The Supreme Court has also emphasized that this exhaustion requirement mandates "proper exhaustion," which demands compliance with prison procedural rules before suit is filed in federal court pursuant to § 1997e(a). *Woodford*, 548 U.S. at 93.  The requirement of proper exhaustion is intended "to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

By requiring exhaustion of administrative remedies, Congress hoped that "corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id*. (citing *Booth*, 532 U.S. at 737).  In addition to filtering out potentially frivolous claims, Congress also believed that an internal review process would facilitate the efficient adjudication of cases ultimately brought to court by giving prison officials an opportunity to develop an administrative

11

record that clarifies the contours of the controversy. *Id*. (citations omitted). Thus, it is settled law that prisoners must strictly follow prison procedures to comply with the exhaustion requirement. *Dole*, 438 F.3d at 809; *Pozo*, 286 F.3d at 1025.

Finally, plaintiff argues that his claims are exempt from the 14-day limit under federal laws that regulate medical devices. (Dkt. #37, at 15-16.) Unfortunately, plaintiff has failed to demonstrate that federal regulations on medical devices have *any* bearing on the prison administrative grievance process or the exhaustion requirement found in § 1997e(a), which applies to all inmate suits about prison life, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

Accordingly, plaintiff failed to present his claims against defendants Hannula, Barker, Maddikunta, and Cook through all steps of the administrative remedy process, as required for exhaustion. *Pozo*, 286 F.3d at 1024; *see also Woodford*, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). Because plaintiff has failed to raise a genuine issue of material fact on whether he exhausted administrative remedies as required, defendants Hannula, Barker, Maddikunta, and Cook are entitled to summary judgment on the claims against them. *See Shaw v. Bohnsack*, No. 23-cv-5-jdp, 2024 WL 688529, at *2 (W.D. Wis. Feb. 20, 2024) (granting summary judgment where a Wisconsin prisoner failed to file an inmate complaint within 14 days of the alleged incident or justify his untimeliness in the inmate complaint). Given

that defendants' motions must be granted, plaintiff's claims against them will be dismissed without prejudice.[6]

ORDER

IT IS ORDERED that:

1) The motion for summary judgment filed by defendants Joan Hannula and Jamie Barker (dkt. #31) is GRANTED.

2) The motion for summary judgment filed by defendants Rajesh Maddikunta and Emily Cook (dkt. #33) is GRANTED.

3) The clerk's office will set this case for a new scheduling conference on the remaining claims against defendant Leslie McKee.

Entered this 28th day of August, 2025.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

---

[6] *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (noting that all dismissals for failure to exhaust should be without prejudice). Unless barred by the applicable statute of limitations, this means plaintiff may refile his claims if he can still successfully exhaust them.